his death. I shall state my reasons for reaching this conclusion.

The intention of the parties, as I gather it from the four corners of their agreement, was that the options given by paragraph 4 to purchase the stock of a deceased member of the trio of stockholders were to be personal rights running to the two surviving stockholders as individuals and to them only. The purpose clearly was to enable the survivors of the trio of stockholders who had launched the corporation, or one of them, to continue the enterprise, which together the three of them had begun, by acquiring all the corporate stock. There is nothing to indicate that the parties intended that these particular rights should pass to executors, administrators or assigns under the general language of paragraph 7 and I conclude that they did not so pass to the petitioner as Bishop's administratrix.

Moreover it is clear from the agreement that upon the death of Bishop, the first of the trio to die, the right to purchase his stock, and any stock which he may have transferred to the petitioner as his wife as permitted by paragraph 2, became vested in Vose and Jenckes. That right was actually exercised by Vose in writing on January 24, 1957 when he filed in this court in Bishop's Estate his claim to purchase the stock. True Vose's purchase of the stock was not then completed since the amount of the purchase price was disputed and has not yet been determined. But the exercise by Vose of his option to purchase Bishop's stock, as appears to be his right under the agreement, effectively eliminated any possibility of the subsequent existence of an option in the petitioner to purchase Vose's stock upon his later death. Any other construction of the option provisions of the agreement would produce an absurd result, placing the parties upon a merry-go-round of successive options which would never end.

The petition will be denied.

Honor **JEFFREY**

v.

**APPALACHIAN ELECTRIC POWER COMPANY, a corporation.**

**Civ. A. 1895.**

United States District Court
S. D. West Virginia.
April 23, 1958.

Toney E. Cline and Martin Bowles, Charleston, W. Va., for plaintiff.

J. Campbell Palmer, III, Charleston, W. Va., for defendant.

BEN MOORE, Chief Judge.

This case has been pending before me upon motion of defendant to dismiss, and for summary judgment. The motion for

summary judgment is supported by the joint affidavit of Merrill Atkinson, C. E. Yeager, and S. K. Shelton. No counter affidavits have been filed. Defendant's counsel have submitted a brief in support of the motion, and counsel for plaintiff have said that they do not desire to submit any brief.

On this state of the record, I come to the following conclusions.

The complaint contains an averment that defendant's high-voltage electric wires encroached upon the property of plaintiff and her husband without their permission and consent, and that they constituted a trespass on this property. It is further alleged that defendant's wires were negligently and carelessly constructed, and maintained in close proximity to the ground and inadequately and improperly insulated.

The affidavit filed with the motion shows as a fact that defendant's poles carrying the high-voltage wire were erected in a street of the town of Chapmanville, West Virginia, and not on the property of plaintiff and her husband. It is further disclosed by the affidavit that the high-voltage wire was attached to insulators directly on top of the poles and therefore did not and could not encroach on their property. In the absence of any counter affidavit it must be taken as uncontradicted that the high-voltage electric wire of defendant did not encroach upon their property and therefore did not constitute a trespass thereon.

It is likewise shown by the affidavit and not contradicted that defendant was possessed of a franchise both from the County Court of Logan County and from the town of Chapmanville, West Virginia, to erect and maintain poles in the streets and alleys of that town, and that the poles supporting the high-voltage wire with which the antenna being handled by plaintiff and her husband came in contact, were erected in the year 1936; and that the wire which carried the high-voltage current was 25 feet above the surface of the roadway and about 23 feet above the surface of plaintiff's yard.

The uncontradicted statements in the affidavit as to the circumstances of the accident based on statements of plaintiff band were moving their television antenna from one part of their property to another, attempting to hold it erect while so doing; that it got out of control and fell into the high-voltage wire; and that plaintiff's husband was killed and herself seriously injured by the resulting short circuit.

All the cases which I have examined are unanimous in holding that there is no duty on a power company to insulate its high-voltage wires, provided they are strung at a sufficient height above the ground to provide ample clearance from any foreseeable human contacts. They are not insurers of the public, and are not required to foresee that some person may thrust a metal pole into the air in such a way as to come in contact with the high-voltage wire.

I know of no court which has said that maintenance of a high-voltage line at a distance of 25 feet above the ground in a street in a residential town or village is in itself negligent.

I conclude as a matter of law that plaintiff has not, for the purposes of this motion, alleged any facts which constitute negligence on the part of defendant. Therefore, the motion for summary judgment will be granted.

Since I have concluded that the uncontradicted facts show complete lack of negligence on the part of defendant I do not consider it necessary to decide whether or not plaintiff herself was negligent as a matter of law.

An appropriate order may be submitted for entry.